Robert Troxell v. Workers' Comp'n Mr. Regan, John Bishardi for the employee petitioner, Mr. Troxell here. As you know, there are two cases that were consolidated for arbitration. I will not go over the facts of each case, only to the extent that I need to elaborate on my argument. With respect to the first accident, a specific trauma accident, lifting 50-pound bags of salt, I would like the court to take note of a few factors here. First of all, that the petitioner was diagnosed with L4-5 and L5-S1 pathology with respect to the lumbar spine by a Dr. McElhaney. That Dr. McElhaney treated the condition with an epidural steroid injection and suggested that surgery was a surgical option in 2006, January of 2006. And also that the other option was for the employee to live with the condition, modify his activities, and the petitioner, the employee, decided that course of treatment option and received a permit or restriction of no lifting over 50 pounds. He returned to work for the same respondent with that restriction. His work activities were so modified and he continued to perform his work activities in the same manner. In about the summer of 2008, he developed, I guess, a worsening or recurrent problem with his bilateral thighs. And his Dr. Savignago, his primary care physician, Dr. Savignago, referred him to physicians in Peoria, Dr. Lee, who diagnosed his condition as a lateral cutaneous neuropathy, an entrapment of the sensory nerves in his thigh versus a possible degenerative disc disease in the lumbar spine. There were a few treatments, a few office visits with Dr. Lee throughout the summer. Treatments were started, including medications and injections. He was referred to a Dr. Henry, who was also a bit confused as to whether there was a radiculitis versus a lateral cutaneous neuropathy going on. At no time when the employee was seeing Dr. Lee or Dr. Henry were his work activities modified, restricted in any way other than the manner that Dr. McElhaney previously modified them. But doesn't this issue sort of turn on whether or not the evidence established that the claimant's April 15, 2005 injury had stabilized by January 2006 and whether or not the later injuries had anything to do with that? And you've got mixed evidence, okay? You've got claimant's testimony. You've got his statement that he and Dr. McElhaney discussed the surgery, although apparently Dr. McElhaney's treatment notes for the visit mentioned nothing about any surgical actions. So you've got mixed evidence there. You've got the testimony that Dr. McElhaney released the claimant to work in January 2006. He sought no further treatment for two and a half years. And then you've got Dr. Zellwey saying that the claimant's April 2005 injury had resolved itself and any later symptoms were unrelated. So you've got contrary evidence. So how is the commission's decision against the manifest way? I would like to take them separately, if I could. Sure. With respect to the April 2005 accident, that continues to be a continuing contributing factor to his current condition. And I believe Dr. Molman testified to as such. And I believe the petitioner's testimony supports that as well. There is no evidence of an intervening accident. And that's an affirmative defense on the respondent's part, the employer's part. There is none. The concept of maximum medical improvement stability is not synonymous with an intervening event. There is no legal precedent for the finding that if a condition stabilizes through choice of patient care or through the end of treatment, that that ends the inquiry or it ends the condition for all future problems. As you know, the case law states that every condition that naturally flows from an original injury is compensable. Right. And I think that that is the case. I think the commission chose to create a theory of law here that if a person reaches maximum medical improvement, then all of a sudden that magically ends their rights under the act. And I believe that's contrary to well-settled law. Well, let's try to pin down one issue. Is it your opinion that the claimant never reached MMI in this case? No, I don't believe. It's not our position he did not reach MMI. He reached MMI when he chose that he was going to treat the condition conservatively. It stabilized. There was no further treatment that he chose to pursue. And he had no work restrictions and he's back to work. Well, we contend he did have work restrictions and he was back to work and they were accommodated. And that's what we believe the evidence shows. He did go back to work. But regardless of whether there were work restrictions or not, and even if you say there were no work restrictions, that is not the fact that this case turns out. If he goes back to work in the course of daily activities or work activities, the condition destabilizes or becomes symptomatic to the point where he feels that he needs to get more medical care. As long as he can establish that the original work accident was a contributing factor to his current condition, the act says that that is a compensable injury and it remains compensable. And so the commission erred specifically in what regard in this case? Two issues. I believe that, as I was saying originally, that they found a manifestation date which I believe was inappropriate. And I believe it was inappropriate because there was no evidence that the petitioner knew on the October 28, 2008 date that he was potentially suffering an aggravating work accident from repetitive trauma. There's no evidence, and in fact he testified that there was no discussion between he and the doctor, that these work activities were in fact destabilizing or contributing to the destabilization of his lower back condition. And that's further corroborated by the fact that Dr. Lee did not restrict him, nor did the petitioner, when he spoke with Dr. Saldanago, relate a specific repetitive trauma history necessarily. He was still attributing it to the April 2005 event because that was always in his mind. In the medical records, he says that the medical records state as much, that he attributes it back to that time. When he went in and spoke with his doctor, he had to have the primary care physician, Dr. Saldanago, he sat down and he had that discussion with him. Are my work activities causing this problem? And that was the first discussion and the only evidence in the record where it is clear that there is a manifestation date. And that is in the discussion with Dr. Saldanago. What do Dr. Lee's treatment notes of October 23, 2008 say that she told him? I'm sorry, I didn't quite hear you. What do Dr. Lee's treatment notes of the visit on October 23, 2008 say that she told him on that day? That the work activities could be aggravating the symptoms. That's what the treatment notes say. But you have to look at it in the context of the circumstances. I don't think if you have a person who has had a specific accident, knows that they or believes that they have a lumbar spine condition already, and is necessarily has the required legal knowledge to know that he is experiencing a repetitive trauma accident, which must be reported, he is still operating under the assumption that he had the previous work incident, that he has the restrictions, and that these work activities are merely causing symptoms. Much as he testified, he had symptoms throughout the course of his life that would wax and wane. So that doesn't, in my opinion, I don't think it should have caused the commission to say, okay, there's your trap door. Now, manifestation has occurred merely because Dr. Lee said that to him under these circumstances. Well, it isn't just Lee's testimony. Isn't it true that he sought no medical treatment for the back for over two years, from January 2? So if he's seeking no medical treatment, then all of a sudden seeks treatment, on top of the fact that his pain is getting progressively worse, the doctor says it may be related to the work activities, that's not enough to tell him that it's related to the work activities? But, Your Honor, you'll note that the doctor was treating him for lateral cutaneous neuropathy. How can we ask a layperson to know whether that condition is necessarily related to his back? He was told it was a nerve impingement in his sensory nerves in his leg. That doesn't necessarily equate to you have a back injury or you have work activities resulting in a back injury. Well, you're making a very logical argument. On the other hand, keep in mind you're making that with the testis. Is the opposite conclusion clearly apparent too? I think it is. I think that when you look at the testimony, when you look at what the commission has to consider, I believe it's the state of mind of the petitioner, the employee. Not necessarily what Dr. Lee's records say. It is not an opportunity for the commission to find a way to deny claims. It is a way to find out what was reasonably considered to be in the petitioner or the employee's mind at that time. And that's where the manifestation comes from. Well, they have to have inferences. We know we have this issue with civil cases, criminal cases. Nobody knows directly, can't look into somebody's mind. And you have to consider it, infer it from the surrounding circumstances. Right. And the other circumstances which argue against that is that when he saw Dr. Salvignago, Dr. Salvignago in the spring, in April of 2009, was referring back to the 2005 accident. And clearly at that time the history was the petitioner was giving Dr. Salvignago, this is from my old accident, this is not from anything new. And also when he went to see the employee or the employer, he tried to report something and they said, this is from your old accident. So it's not clear. I think even the employer's own testimony demonstrates that it's not in the normal understanding of lay people that repetitive work activities are necessarily causing a new accident in this context. If perhaps there was no history of a lower back condition, then perhaps in those circumstances you can use that first treatment date, that date when it appears as if the work activities are being discussed and the doctor is mentioning that these are aggravating symptoms, that can be perhaps a manifestation date in the absence of any history. But when you have in this situation, in this context, an injured worker who has a known, or at least in his mind, a known lower back condition, that he's been doing activities which he understands to be within his restrictions, and he's having symptoms, that doesn't necessarily equate to a manifestation date for a repetitive trauma accident. And I think the commission erred in not using the date where the testimony and the evidence is clear that the concept of a repetitive trauma accident, the work activities, and the condition became apparent to him. And it's not unreasonable to conclude that that date was the appropriate date. Having said that, I don't think you need to even find that there was a repetitive trauma accident to find that the original work accident continues to be a contributing factor to his lumbar spine condition and need for surgery. There's been no evidence of an intervening accident. I understand, and you will recall, I don't think the commission really relied upon any other doctor's testimony that it was a strain. Just because something's a strain doesn't cut off causation as well. He testified that he would go to work and his work would be always at a single level during the beginning of the day and then it would go up towards the end of the day. So he always had symptoms, he just chose not to treat them more aggressively. We would ask that the court reverse the commission or amend the case for findings on additional temporary disability, medical expenses, and permanency, find that the proper manifestation date was the May 15, 2009 accident date, that he properly notified his employer, and also that the current condition, or the April 2005 accident, continues to be a contributing factor to the current condition and need for surgery. Thank you. Thank you, Mr. Picardi. Mr. Egan, you may respond. Thank you, Your Honors. I believe the evidence is very clear in this case about Mr. Troxell's knowledge of his condition. I think his own testimony points to it and I think the doctor's records point to it. We start with the first injury. He treats for seven, eight months, reaches a level of permanency, in my mind, he reaches a state of MMI anyway, and I believe it's pretty clear that he did. He worked his regular job duties for at least two and a half years before he said he started having some problems in the summer of 2008. Was there any evidence of him reporting to any doctor's medical facilities of any problems and or did he seek any treatment? There was not, not from when he was released in January of 2006 until he saw Dr. Savignano in August of 2008. That's the best I can do with that name today. In 2008, he sees Dr. Savignano, who refers him to Dr. Lee. Dr. Lee is giving him injections at L3. Dr. Lee is talking to him and telling him that your work duties might be causing this problem. I don't think it's unreasonable for three triers of fact, really, to this point, to reach the same conclusion that if you're having, if you started having problems in which your own testimony is that you start the day at a one and you'd end it as four or five, you go to the doctor, the next treater tells you it could be your work condition, is giving you injections, or your work duties is giving you injections in the lumbar spine, that you might have a problem with your back. So I don't think Mr. Troxell is the innocent in that regard. What about your opponent's argument that this was simply an aggravation of a pre-existing condition that just continued to exist over a period of years? That's not what they pled. They pled a repetitive trauma complaint in 2009. If that was the case, it was an aggravation, they should have pled an aggravation in 2008 when the gentleman started treating. I believe that it's clear that in case law that if you've reached a point where it's no longer a problem, you haven't been treating in two and a half years, that you've reached a state of permanency for that injury. If he aggravated another day, there's no testimony how he aggravated that day. Repetitive trauma. They're making a repetitive trauma complaint, and really in essence I think to have a bite of both apples. If we can't get it with the repetitive trauma claim, we'll go back to 2005. Should they have a bite of both apples? No, I don't think they should. Not in this case. Because I think it's clear, I think the evidence was clear in this case, that he reached a state of permanency in 2005. I think there was a 2005 injury. Based upon a lack of complaints, medical treatment, et cetera? Correct, and no complaint yet. Right, correct. And in the new incident, even when he saw Dr. Molman in the spring of 2009, in his intake form, in his own handwriting, he says his symptoms started in August 2008, and he was lifting, doing heavy lifting. So he knew what the problem was. He always knew what the problem was. If this was an extension of the 2005 claim, there would have been an 8A. We would have been arguing about this from day one. Instead, it was done as a repetitive trauma complaint. I don't believe it was against the manifest way for, as I said, to retrial as a fact, to reach a unanimous conclusion, that Mr. Troxell failed to provide his employer notice, and I will rest. Thank you, Mr. Egan. Mr. Shardy, you may reply. Thank you. I don't take the same position that a lack of complaints or a lack of documentation of complaints in medical records necessarily is a basis to deny this gentleman's benefits. I think this is analogous, as I mentioned in our brief, to a 19H, 8A type petition. You have situations where injured workers receive medical care, they stabilize, they go a period of time without any additional medical care, and then they have additional medical care within a certain window, perhaps in terms of the 19H, or if it's just 8A, they get additional medical treatment. Those are routinely found compensable in those situations with additional evidence demonstrating that the original injury continues to be a contributing factor. Did you plead aggravation of a pre-existing injury? I don't know that that's required to plead an aggravation of a pre-existing condition. We are allowed to plead accidents, and there can be accidents under both scenarios. If you plead murder under promise, correct? We're a notice pleading state, not a fact pleading state, especially when it comes to applications for adjustment of claim. And that's what we did. And there was an aggravation, according to our theory, at least by the time that the petitioner became aware of that with Dr. Savignaco. When he, the counsel mentioned when he spoke with Dr. Molman, and he gave the history to Dr. Molman of both events, the April 2005 event and then his repetitive trauma, that was after he had had that discussion with Dr. Savignaco. So it wasn't as if he knew all along. In that context, he knew at that point, because he already had the conversation with Dr. Savignaco, about his work activities possibly contributing to his symptoms and destabilizing his back and causing more symptoms. And for that reason, we believe that we have established his right to benefits under both theories. And we would ask that you modify the arbitrator's decision as previously requested. Thank you. Thank you, counsel, both for your arguments. This matter will be taken under advisement. The written disposition shall issue.